**FILED**
U S DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 5 2015

JAMES W McCORMACK, CLERK
By:_____ *XBrc*_____
DEP CLERK

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**DAVID STEBBINS**                                    **PLAINTIFF**

**VS**                          CASE NO. 4:15cv 332-B6m

**DONNA GAY AND JIM HANNAH**                          **DEFENDANTS**

### COMPLAINT AND JURY DEMAND

1.      Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following

Complaint with jury demand against the above-named a violation of 42 USC § 1983.

2.      Specifically, Defendant Donna Gay, acting in her official capacity as an officer of the

Arkansas Administrative Office of the Courts, assigned a special judge a case in the Boone

County Circuit Court in which Plaintiff was also a litigant. Defendant Jim Hannah – acting in

his official capacity as Director of the Arkansas Administrative Office of the Courts approved

this assignment. However, this assignment violated Plaintiff's right to an impartial judiciary, and

it is through their negligence that this injury happened.

3.      This case poses a novel question of law. That novel question is thus:

> Do administrative assistants to the judiciary (who, by reason of their being
> "administrative," do not have absolute immunity from suit) have a constitutional
> obligation to do everything in their power to ensure that all citizens' constitutional
> rights are accommodated? For example, when assigning special judges to cases
> in which all circuit judges have recused, is the Administrative Office of the Courts
> obligated under the Constitution to assign a "qualified" judge (that is … a judge
> who will not issue any rulings that are in violation of the Constitution)? If so, can
> the Administrative Office be held vicariously liable for the unconstitutional acts of
> the special judges they negligently appoint?

4.      Plaintiff is well aware that this Court has a series of two-word phrases on its mind right

now: "Sovereign Immunity" and "Judicial Immunity" being just a few examples of them. Please

read the entire complaint; because Section IV of this Complaint (beginning on Page 11)

**This case assigned to District Judge** *Miller*
**and to Magistrate Judge** *Kearney*

addresses these issues in-depth.

## SECTION I:  JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over the Defendants because they work in the City of

Little Rock, AR, and it is during their jobs that they committed this § 1983 claim

6.      This Court has federal question jurisdiction to decide this dispute, pursuant to the statute

of 42 USC § 1983.

7.      Venue is proper in this Court on two counts:

**(a)**      A substantial portion of the actions and omissions complained about in this Complaint

took place in the city of Little Rock (thus establishing venue pursuant to 28 USC § 1391(b)

(2)), and …

**(b)**      All of the Defendants either are residents of the State of Arkansas, or they *are* the

State of Arkansas, and at least one defendant either resides, or is headquartered, in the City of

Little Rock, thus giving proper venue under 28 USC § 1391(b)(1).

## SECTION II: NATURE OF CLAIM

8.      The following facts form the basis of Plaintiff's Complaint:

9.      After Plaintiff posted bail to be released from pre-trial incarceration following an arrest,

Plaintiff proceeded to file a lawsuit in Boone County Circuit Court against the alleged victim of

Plaintiff's charge – his father, David Dwayne Stebbins[1] – for seven (7) claims, including the

common law tort of malicious prosecution.  The case was given Case No. CV2012-85-4, and was

assigned to Boone County Circuit Judge Gordon Webb.  Plaintiff sought $11,000,000 in

damages.

10.      To make a long story short (details can be provided on this matter during litigation if they

---

1   the fact that Plaintiff has the same first and last name as his father, but a different middle name means that
Plaintiff's name is technically not "David Stebbins, Jr." This has always caused great confusion.

are required), Judge Webb issued a letter to the parties in the case explaining that he was recusing himself. The letter was dated on November 25, 2013, and it stated that he would petition the Arkansas Supreme Court for a special judge if no other judges in the 14th Judicial Circuit (of which Boone County is a part of; see A.C.A. § 16-13-2201) were either unwilling or unable to take the case.

11.    After approximately a month's time, Gordon Webb proceeded to file the promised Petition with the Arkansas Supreme Court on the date of December 31, 2013.

12.    Eight days later, on the date of January 7, 2014, Jim Hannah – in his official capacity as Chief Justice of the Arkansas Supreme Court – issued an order simultaneously granting Gordon Webb's petition for leave to recuse and appointing semi-retired judge David Clinger to preside over the case.

13.    Everything seemed to be going smoothly, until the middle of June, 2014, David Clinger asked to *himself* be relieved of this assignment, citing some sort of "family emergency." Thus, on June 20, 2014, Jim Hannah – acting in his official capacity as Chief Justice of the Arkansas Supreme Court – relieved Clinger of the assignment. However, unlike before, this was not accompanied by a replacement appointment.

14.    Plaintiff waited patiently for a new judge to be appointed to the case. And he waited. And waited. For a total of a whopping 108 days (that's 13½ times the amount of time it previously took to get David Clinger on the case), Plaintiff patiently waited for a new judge to be appointed. However, no news came. Plaintiff never even got so much as an indication that the Administrative Office of the Courts was even *trying* to find a new judge to replace Clinger.

15.    Thus, finally, on October 6, 2014, Plaintiff had had enough. He called the Arkansas Administrative Office of the Courts and asked what was taking so long. After being re-directed

about a half a dozen times, Plaintiff was advised that the person he needed to speak to was named "Donna Gay." He called back about fifteen minutes later, after Ms. Gay had an opportunity to enter her office, and then he spoke to her.

16.     She offered no excuses, no explanation as to why it was taking nearly four whole months to find a new judge, saying only that it "just was."

17.     Plaintiff subsequently advised her that, as an *administrative* officer (and not a judicial one), she is not entitled to absolute immunity from suit; thus, if she does not do her job, consequences can and will attach.

18.     Immediately after this warning, she pledged that she would find a new judge as quickly as possible.

19.     Literally ONE DAY LATER, on October 7, 2014 (after a whopping 109 days of waiting), Donna Gay submitted an email to Plaintiff which contained an attachment. This attachment was an order from Jim Hannah appointing Russel Rogers onto the case.

20.     Russell Rogers, however, completely ignored Plaintiff's constitutional or statutory rights. Plaintiff does not know if this animosity came from political pressure, or if Rogers just personally found Plaintiff to be annoying. That is not important; what is important is ... he made it perfectly clear that he did not like Plaintiff (for whatever reason), and he was going to use his disdain towards Plaintiff to ensure that Plaintiff did not win his case.

### The relevance of Rogers' clear bias

21.     Before Plaintiff goes any further, he wants to take time out of this complaint to address this elephant in the room: He is well aware that Russel Rogers has judicial immunity for these acts. That is why Rogers is not listed as a co-Defendant in this action.

22.     In this case, Rogers' biased actions are not the constitutional violation; they are the injury

that was caused by the constitutional violation.

23.     Think about it this way:  If a defendant in a case bribes the judge to rule in their favor, the judges' ruling might be protected by judicial immunity, but that would not stop the Plaintiff from suing the Defendant again, for bribery. The judge's action, in that circumstance, is not the legal violation; the violation of the plaintiff's rights is the bribery, and the judge's ruling is the injury.

24.     A similar theory applies here.  If Plaintiff has a constitutional right to an impartial judiciary, and if he can prove that he was deprived of this right, and he can also prove that this deprivation was caused, at least in part, by the unlawful acts or omissions of one or more people who do not have absolute immunity from suit, then he may recover from those people for that injury.

**Back to the Complaint**

25.     Examples of things he did without any legal authority, or clearly out of animosity towards Plaintiff, include, but are not limited to, the following:

- He denied Plaintiff's "Motion to Always Read the Law in Future Motions."  This motion was designed to ensure that whichever judge got assigned to Plaintiff's case would actually FOLLOW the law, and not use his judicial immunity to his advantage.  Although Plaintiff suffered no prejudice, just on this alone, it set the stage for everything else to come.

- He dismissed, with prejudice, five of Plaintiff's seven claims.  There was no motion to dismiss pending, and he never even ATTEMPTED to give any grounds for why they were being dismissed.  He was dismissing them because … he did not think Plaintiff deserved his day in court. He wasn't even PRETENDING like it was more than that.

- He denied Plaintiff his right to discovery, simply on the grounds that Plaintiff's discovery

requests were "confusing" and "unlikely to lead to admissible evidence." He never

explained his decisions, or attempted to talk to Plaintiff about the alleged confusions.

- He denied Plaintiff's motions for summary judgment, claiming that the facts were still

  disputed, when the Defendant had admitted to said facts in response to a Request for

  Admissions.

- He declined to rule on the admissibility of any evidence until jury trial. This caused

  potentially inadmissible evidence to still be heard by the jury. He did this, simply out of

  a desire to ensure that Plaintiff had as difficult a time as possible

- Right before the jury trial (which, for the record, he forced Plaintiff into before Plaintiff

  had enough time to prepare), when a witness had not appeared, even though he never

  moved to quash his subpoena, he declined to send out a search party for that person,

  simply on the grounds that he personally did not consider this witness's testimony to be

  necessary. In other words, he was usurping the position of "Plaintiff's counsel" and

  deciding litigation strategy on Plaintiff's behalf.

- Speaking of trying to decide litigation strategy on Plaintiff's behalf, when the trial got

  underway, and when Plaintiff was giving his own direct examination, he allowed the

  Defense Counsel (named Jim Goldie) to constantly interrupt Plaintiff's testimony and try

  to develop Plaintiff's testimony for him. He consistently tried to suggest evidence that

  Plaintiff should testify about, rather than waiting for his turn to conduct cross-

  examination. Judge Rogers allowed this, despite Plaintiff's protests, and specifically

  BECAUSE it prejudice Plaintiff.

- Also during trial, he repeatedly allowed the Defense Counsel to introduce clearly

  inadmissible evidence (such as hearsay evidence, evidence of prior acts that Plaintiff

allegedly did, etc.) simply on the grounds that Plaintiff had already introduced these exhibits at some point in the litigation. The Judge offered this evidence in direct violation of Arkansas Rule of Evidence 105 ("Whenever evidence which is admissible as to one [1] party or for one [1] purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly").

○ Perhaps the worst example of this came during Day 2 of the trial. When conducting direct examination of the Defendant himself, the Defense Attorney used the forensics report that Plaintiff introduced to show evidence that somebody – who wasn't even called as a witness at that trial – had told somebody else, over the phone, that Plaintiff had acted in a way that person considered to be excessively violent, and for that matter, did not even give any specific instances of conduct, only that Plaintiff was violent with that person. What was already heavily opinionated and conclusory was made even more inadmissible by the fact that it was not merely hearsay, but hearsay within hearsay.

○ Another good example came during Plaintiff's cross examination. When his attempts to get Plaintiff to testify to the University of Arkansas' hearsay accusations that Plaintiff had formulated some "grand scheme" to murder his father four years in the making, he brought it up on cross examination. Plaintiff objected to this evidence on the grounds that A) it was hearsay, and B) it was inadmissible under ARE Rule 404(b)[2]. At first, Goldie asked Plaintiff to simply admit that it was there, "whether it's true or not," suggesting that he had some other plans for this evidence, beyond simply

---

2  Evidence of prior bad acts is inadmissible to show that Plaintiff acted in accordance therewtih on a particular occasion.

to prove the truth of the matter asserted. However, later in that trial, when Plaintiff was trying to introduce some similar evidence, Goldie freely admitted that he introduced that evidence for the express purpose of showing that the Plaintiff held a vendetta against the Defendant, meaning that he introduced the hearsay evidence for the purpose of proving the truth of the matter asserted.

○ All the while, in all the times the Defense Counsel did this, he never even so much as ATTEMPTED to offer any evidence that any one of these hearsay accusations were true. The Defense Attorney's only argument for being allowed to show this evidence was "HE brought it up!" His argument was that, if Plaintiff introduces an exhibit for one purpose, then the Defense Attorney is allowed to use that exhibit for whatever purpose he likes, even if it would be inadmissible for that purpose otherwise. Moreover, he spoke as if this was well-established law; like it was common knowledge among legal circles, and that anyone who had a legal education regarded this legal doctrine as second-nature. Quite frankly, Rule of Evidence 105 says the complete opposite.

***BEFORE WE CONTINUE, THE COURT IS RESPECTFULLY REMINDED THAT THIS CASE IS NOT ABOUT WHETHER THE SPECIAL JUDGE ACTED APPROPRIATELY, BUT RATHER, WHETHER THE TWO DEFENDANTS ACTED UNLAWFULLY IN FAILING TO ASSIGN A JUDGE WHO WOULD ACT APPROPRIATELY. WHETHER PLAINTIFF WAS, IN FACT, INJURED BY THERI FAILURE IS A QUESTION OF FACT, NOT A QUESTION OF LAW. THEREFORE, THIS COURT NEED NOT CONDUCT ANY ANALYSIS INTO STATE LAW; THAT WILL BE THE JURY'S DECISION.***

• The Defense Attorney objected to numerous exhibits that Plaintiff attempted to introduce. However, he did not state any grounds for why the evidence should be inadmissible. Instead, he argued that the evidence did not prove what Plaintiff claimed it to prove. He then asked the Court – not the jury, but the Court – to decide which side the evidence

favored. This was a clear abuse of judicial authority. By the judge's own admission, when it was instructing the jury on the law, it is the JURY'S job, not the judge's, to determine the weight of the evidence.

- ○ Plaintiff was most heavily prejudiced on this matter when he attempted to introduce written threats made by the Defendant – either the Defendant himself, or through counsel – threatening to collaborate with the government to deny Plaintiff access to the courts. The Defense Attorney offered his own take on the matter, and the Court simply decided that, since he personally did not believe that the letters proved what Plaintiff offered them to prove, the jury was not going to get the opportunity to disagree with it.

- Despite all of this, the Defendant himself (as opposed to, the Defense Counsel) actually ADMITTED to every single underlying fact that was necessary to support the two claims that remained. Despite this admission, Rogers refused to grant Plaintiff's Motion for Directed Verdict, simply calling it a "fact question," even though, you know, the Defendant ADMITTED TO IT! He never even attempted to explain his ruling beyond that. It was a fact question; just shut up and accept the Judge's biased decision like a little punk.

26.    So Plaintiff conducted his jury trial to the best of his abilities. As the Court may have guessed, he lost his case, when he was unable to show some of his most probative evidence, and the Defense was allowed to lay down exhibit after exhibit of hearsay evidence in order to stir up amongst the jury.

27.    Feeling that there was no justice in the world, Plaintiff retired to his apartment, expecting to never leave that place. Why, you ask? Because as soon as he got home, he took off his shirt

and proceeded to ingest and entire Powerade bottle full of bleach. He did not WANT to live in a world where judges could simply ignore the law if they felt like it.

28.     To make a long story short, Plaintiff's life was saved. He was taken to a hospital in Jonesboro and diagnozed with Clinical Depression.

29.     Plaintiff proceeded to file a "Motion for Judgment NOV or in the Alternative for New Trial" with Russel Rogers. However, this motion is just going to be denied (or ignored; Rogers has a tendency to ignore motions he thinks are stupid, rather than denying them). He will also file an appeal in that case, but the jury verdict is just going to be affirmed, no matter what Plaintiff says, because the appellate court justices do not care what the precedent is; David A. Stebbins is the appellant, and therefore, the appeal is automatically frivolous. They probably won't even give any explanation, whatsoever, as to why it is being affirmed (because they won't be able to give an explanation that isn't patently absurd; they can't say, out loud, the REAL reason the decision is being upheld. If they did, they would have to publicly confess to their own corruption). Thus, Plaintiff has lost the case, not on the merits, but because he is politically disfavored by the State of Arkansas.

30.     On May 5, 2015, Plaintiff contacted Donna Gay about a special judge being appointed in a different case. After this phone call, Plaintiff submitted an email to Donna Gay, explaining that she can be held liable if she does not take a special judge's integrity, honesty, and impartiality into consideration when choosing a special judge. In this email, he made similar legal arguments to those that will be given later in this Complaint.

31.     On May 26, 2015, Plaintiff called Donna Gay again (this time, recording the phone call) in an attempt to check up on the special judge assignment. During this phone call, in response to the email Plaintiff sent her on May 5, Donna gay freely admitted that she, and the rest of the

Administrative Office, "don't do anything to ensure anything. We don't run any tests, or anything." Thus, if Ms. Gay and Mr. Hannah have constitutional obligations to exclude rogue judges from being selected to be special judges, she has freely admitted to violating this obligation, as a matter of policy.

32.     At that point, Gay hung up on Plaintiff, and did not allow Plaintiff to ask any follow-up questions. Plaintiff proceeded to get to work, typing this complaint.

## SECTION IV: APPLICABLE LAW & STANDARDS

33.     The following law controls the legal merit behind this Complaint:

### Sub-Section 1: The clearly established law.

34.     Plaintiff has the absolute right to an impartial judiciary. This is one of the few rights in the Constitution which is truly absolute; even free speech has a few exceptions to it, but the right to an impartial judiciary cannot be taken from Plaintiff under any circumstances whatsoever.

35.     The reason for this absoluteness is obvious: Even if a person has done something so heinous that he does not deserve an impartial tribunal, how exactly can you be so sure that this person has actually done that unless he receives full due process first, which includes an impartial judiciary?

36.     See *Republican Party of Minn. v. White*, 536 US 765, 804 (2002):

> "A judiciary ... owing fidelity to no person or party, is a longstanding Anglo-American tradition, an essential bulwark of constitutional government, a constant guardian of the rule of law. The guarantee of an independent, impartial judiciary enables society to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. Without this, all the reservations of particular rights or privileges would amount to nothing." (citations and quotations omitted).

37.     One of the most essential aspects of a fair and impartial judiciary is the "Rule of Law,"

the concept that judges and law enforcement officials should uphold the law, even if they do not agree with the law. Laws should be changed exclusively through the legislative/democratic process. A judge cannot nullify a law simply because he believes it is stupid, and he cannot create a new law unless it would be unconstitutional to not have it (case in point: Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)). Beyond that, judges simply apply the law according to its terms.

38.     In the words of Ancient Greek Philosopher Aristotle:  "[I]t is more proper that law should govern than any one of the citizens: upon the same principle, if it is advantageous to place the supreme power in some particular persons, they should be appointed to be only guardians, and the servants of the laws" Politics, Book III, Chapter XVI.

39.     Alternatively, from the House of Commons from Common Law England:  "Amongst many other points of happiness and freedom which your majesty's subjects of this kingdom have enjoyed under your royal progenitors, kings and queens of this realm, there is none which they have accounted more dear and precious than this, to be guided and governed by the certain rule of the law which giveth both to the head and members that which of right belongeth to them, and not by any uncertain or arbitrary form of government" Hallam, Henry. The Constitutional History of England, Volume 1, page 441 (1827).

40.     And finally, from our own nation:  James Wilson said during the Philadelphia Convention in 1787 that, "Laws may be unjust, may be unwise, may be dangerous, may be destructive; and yet not be so unconstitutional as to justify the Judges in refusing to give them effect." George Mason agreed that judges "could declare an unconstitutional law void. But with regard to every law, however unjust, oppressive or pernicious, which did not come plainly under this description, they would be under the necessity as judges to give it a free course." Snowiss, Sylvia. Judicial

Review and the Law of the Constitution, pages 41–42 (Yale University Press 1990).

41.    As far as the judiciary is concerned, adherence to the Rule of Law effectively boils down to "following precedent." This is known as "stare decisis," or "let the decision stand."

42.    In the words of the California Supreme Court:

> "Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of stare decisis makes no sense. The decisions of [a higher] court are binding upon and must be followed by all the [lower courts]. Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the [circuit] courts of this state, and this is so whether or not the [circuit] court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. … It would create chaos in our legal system if these courts were not bound by higher court decisions."
> See *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2D 450, 455-456 (1962).

43.    Now, in most circumstances, a judge's obligation to adhere to the Rule of Law is, in effect, heavily tempered by the doctrine of "judicial immunity." This legal doctrine throws a huge loophole in most instances where the Rule of Law and *stare decisis* is supposed to be upheld. Because there are no consequences for ignoring precedent, the worst that an aggrieved litigant can do is appeal the decision to a court of justices who have an equal amount of immunity from the law. Even if the decision is overturned (which the appeals courts are NOT required to do, even if the law is clearly established, because of "judicial immunity"), there is nothing stopping the judge from ignoring the law the next chance he gets.

44.    Plaintiff will not, in this case, attempt to convince anyone that judicial immunity needs to be overturned. That is not what this case is about. However, although the judges themselves have judicial immunity, in this case, it was the combined acts of two other people who put the Judge in the position to abuse this immunity, in the first place.

## Sub-Section 2:  The Novel question:  Does an obligation exist
## to exclude rogue judges from appointment?

45.    To support the novel question of law spoken of in ¶ 3 of this Complaint, Plaintiff submits

the following legal arguments:

46.    When a government officer has a supervisory authority over another officer, that

supervising officer has a constitutional obligation to discipline that inferior officer for any

misconduct.  See *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 US 189, 196 (1989)

("Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth

Amendment was intended to prevent government from abusing its power, or employing it as an

instrument of oppression").  See also *Davidson v. Cannon*, 474 US 344, 348 (1986) (same).

47.    A Due Process violation can include "a deliberate decision not to act to prevent a loss."

See *Parratt v. Taylor*, 451 US 527, 548 (1981).  So, if a government official with the affirmative

authority to appoint a judge makes "a deliberate decision not to act to prevent" a judge from

being appointed who will intentionally ignore the law, then the precedent of *Parratt* is violated.

48.    In the instant case, Donna Gay acts under the direct instruction of Jim Hannah, who is the

Chief Justice of the Arkansas Supreme Court.  To say that Hannah, of all people, has no

supervisory authority over the trial courts is laughable.

49.    In most cases involving rogue judges, appellate courts would, indeed, have a constitu-

tional obligation to enforce the law against trial judges by overturning judgments which amount

to a clear abuse of power.  However, due to the doctrine of judicial immunity, avenues to actually

compel the AR Supreme Court to discharge this duty are, usually, very limited.  However, since

the Defendants, in this case, are acting in their *administrative* capacities (as evidenced by the fact

that the office is called the *Administrative* Office of the Courts), there is no judicial immunity.

See *Forrester v. White*, 484 US 219 (1988).

50.     As stated before, federal courts are indeed empowered to create causes of action where

the absence of them would be unconstitutional.  See *Bivens v. Six Unknown Fed. Narcotics*

*Agents*, 403 US 388 (1971).  Where a greater policy (such as protecting judicial independence,

the public policy that is officially behind judicial immunity) is not present, Courts must default to

protecting the constitution.

51.     Here, it would result in an unconstitutional deprivation of Plaintiff's absolute right to an

impartial judiciary if the Administrative Office of the Courts were *not* required to do everything

in their power to protect citizens' constitutional rights, including the right to an impartial

judiciary.

52.     It does not matter if any one specific act or omission is constitutionally required. Any and

all acts and omissions are automatically required if their absence results in one or more

constitutional rights being compromised.

53.     For example:  The Fourth Amendment does not, in its plain text, spell out a prohibition

on suspicionless full-body cavity searches, suspicionless wiretapping of phones, suspicionless

interception of mail or email, or virtually any other specific act. But it *does not have to* spell out

those things, because the RIGHTS conferred by that Amendment – which are spelled out –

automatically, and generally, prohibit any and all acts and omissions which compromise those

rights.  If any new technology is invented in the future that could potentially be used for

government surveillance, that new technology would automatically be covered by the Fourth

Amendment; no laws would have to be re-written.

54.     Another good example – one that has exploded on the news recently – is extra-judicial

punishment, especially by police. The cops in Baltimore, Maryland will not enjoy qualified immunity for taking their arrestees on "rough rides." Plaintiffs in those cases (or that case, in the event that they choose to group the cases together in a class action), to obtain damages liability, will not be required to show a law which bans specifically rough rides; instead, they can simply point to the axiomatic constitutional ban on extra-judicial punishment, convince a jury of their peers (as opposed to the federal district judge) that the rough rides amounted to extra-judicial punishment as a matter of fact (rather than a matter of law), and that will be good enough to overcome qualified immunity.

55.     From these examples and more, it is clear that there is, indeed, a clearly-established constitutional duty to engage in X Act (whatever that act may be) if it is necessary to protect a constitutional right. If, in some contrived circumstance, a polka dance ever becomes necessary to prevent a citizen from being deprived of a clearly-established constitutional right, then that government official takes on a constitutional obligation to do a polka dance. There does not need to be a statute requiring it; the Constitution is good enough. Furthermore, if the circumstances surrounding that situation make it abundantly clear – to the point where no reasonable person would think otherwise – that the polka dance is required to prevent the violation of that clearly-established constitutional right, then the officer would lose his qualified immunity if he did not do the polka dance. It does not matter if there is a clearly-established law requiring a polka dance in that circumstance; if the polka dancer was obviously necessary[3] to prevent an injury, protection from that injury is a clearly-established constitutional right, and the officer didn't do the polka dance, then he is liable for damages. There may not be a statute clearly-requiring a

---

3   In case the Court is worried, keep in mind that THIS is what keeps Plaintiff's absurd hypothetical scenario from becoming a reality. Even in the astronomical event that a polka dance becomes necessary to prevent the violation of a constitutional right, the plaintiff in that case would have an uphill battle to climb convincing a jury of his peers that this necessity was obvious. As a result, Plaintiff's argument of the LAW is still valid, despite the legal doctrine of "reductio ad absurdum."

"polka dance" in that circumstance, but it doesn't matter; that was a clearly-established constitutional right requiring the polka dance, and that is good enough.

56.     Here, screening the candidates for special judges are necessary to prevent one or more litigants from being deprived of the constitutional rights to an impartial judiciary, a fair trial, and the Rule of Law.  Thus, whether is a federal statutory requirement for such a screening or not, there is a *constitutional* obligation to engage in this screening, simply by reason of the fact (as opposed to law) that it is necessary to protect constitutional rights.  Without absolute immunity, there is nothing excusing them from doing everything in their power to protect citizens' constitutional rights.

### Potential Chilling Effect

57.     Ever since Plaintiff began his argument on this novel issue of law, a particular elephant in the room has almost certainly been on the Court's mind:  If the Court were to rule in the Plaintiff's favor on this novel question of law, that would create an incredible chilling effect.  Administrative Offices all over the Eighth Circuit would be scared to assign ANY special judges, even if they seem like perfect candidates, simply because there's no EVIDENCE that they are NOT going to disregard precedent, and they do not want to be held liable because their assigned special judge makes a single mistake.

58.     To be fearful of that is to misunderstand what Plaintiff is asking for in this case.  Plaintiff is not asking for automatic vicarious liability for the acts of the special judges.  Plaintiff is merely asking that they be required to take reasonable efforts to minimize the likelihood of that happening.

59.     To help the Court understand, let's draw a comparison to an aspect of government liability law with which the Court might be more familiar: Municipal liability, especially in the

case of police brutality.

60.      Police Chiefs (and, by proxy, cities) are not automatically liable for the acts of their police officers. To obtain vicarious liability, the plaintiff has to prove that the city's cop-hiring process and/or its police supervising department had fallen below some objective standard of reasonableness. For example, in Seattle, in the case of Josh Lawson and Christopher Franklyn, a copy who arrested them and realized he had arrested the wrong men was caught, on tape, promising to cover up his mistake by telling the two "You're going to jail for robbery, that's all; yeah, I'm gonna make stuff up." When a complaint was filed with the Seattle Accountability Office, that office exonerated the officer, even though the threats were CAUGHT ON TAPE! You can hear the local news story by going to the following youtube video:

                    https://www.youtube.com/watch?v=PnIGY9fOwzI

61.      That is the sort of incompetence and/or corruption that would need to be shown in order for an entire police department to be held liable for the acts of one of their officers. However, if the police force's personnel department conducts reasonable inquiries into the qualifications and tendency-to-adhere-to-the-rules of its applicants, and, once hired, the police force's supervision department conducts reasonable inquiries into the complaints filed against officers, and, despite their best efforts, one or two isolated cases of cops going rogue pop up, the entire police force is not held liable, especially if those cops were fired over those incidents.

62.      That is what Plaintiff is asking for in this case. The Defendants have admitted that they "don't do anything to ensure anything" when assigning special judges. They freely admit to performing their duties in complete disregard to the risk of assigning a corrupt, malicious, or simply unqualified judge. There is a clearly-established constitutional obligation to evaluate and supervise the officers who you appoint, and a clearly-established constitutional obligation to

protect against affirmative abuses of power, and thus, without any form of absolute immunity, the Defendants should be held liable for their self-admitted failure to discharge these clearly-established constitutional obligations.

## SECTION V: SOVEREIGN IMMUNITY

63.     We now turn to the question that must always be taken up whenever a government agency is being sued:  Are they protected by any form of immunity from suit, and if so, to what extent are they protected?

### No absolute immunity for administrative acts.

64.     Let's get the easiest issue out of the way, right now:  There is no absolute immunity, because the act in question is administrative, not judicial.  After all, they are called the *ADMINISTRATIVE* Office of the Courts.

65.     Donna Gay is not a judge, but even if she was, this particular action was administrative in nature.  No one – not even a judge – enjoys absolute immunity from suit for purely administrative acts, and the appointment of court officers is considered by the federal judiciary to be an administrative act.  See *Forrester v. White*, 484 US 219 (1988).

66.     This same precedent means that Jim Hannah is not absolutely immune from suit.  Even though he is the Chief Justice of the AR Supreme Court, this particular function is administrative in nature.  Therefore, he is not immune from suit.

67.     With that said, there is still the possibility that the Defendants may have qualified immunity. See *Maness v. Dist. Court, Logan County-Northern Div.*, 495 F. 3d 943 (8th Cir. 2007). However, as we will soon realize, this is not the case, here.

### Qualified immunity is not applicable, since the constitutional right is clearly established.

68.     The Defendants' entitlement to qualified immunity in the current action is governed by

the precedent of *Maness v. Dist. Court, Logan County-Northern Div.*, 495 F. 3d 943 (8th Cir.

2007). In that case, the Eighth Circuit held the following:

> "We must ask and answer two questions when a defense of qualified immunity is
> raised by a state actor: (1) whether or not the state actor deprived the complainant
> of a constitutional or statutory right, and (2) if there was a deprivation of such a
> right, whether or not the right was clearly established such that a reasonable
> person would have realized that his or her actions were unlawful. If the answer to
> the first question is no then the § 1983 claim fails, and if the answer to the second
> question is no, the state actor is protected by qualified immunity." *id* at 944-45.

69.     They then went on to say that the Defendants did not deprive that plaintiff of access to the

courts, since he could have appealed the Defendants' omission in the state system.

70.     That excuse, however, is not present here. Donna Gay is an officer of the Administrative

Office of the Courts, which is an arm of the Arkansas Supreme Court. There is no higher

authority to appeal to. They *are* the Ultimate Authority on Arkansas Law.

71.     Besides, how do you "appeal" the assignment of a special judge? That is not an

appealable order. In *Maness*, the injury in question was the loss of appellate court access; of

course you can appeal that! But in this circumstance? This was not, officially, a part of

Plaintiff's case. The proceedings were not filed on the docket in the Circuit Court until the AR

Supreme Court Chief Justice issued his order of assignment; the actual *process* for selecting a

judge was never filed with the Circuit Clerk. You cannot appeal that in the State of Arkansas.

You cannot "appeal" administrative orders. Only judicial decrees.

72.     With that said, for qualified immunity to apply, the only thing that must be "clearly

established" is the right itself. The requirement for that one specific act does not have to be

clearly established, so long as the act or omission is (as a matter of *fact*, not *law*) the proximate

cause of a constitutional injury, qualified immunity is lost. As Plaintiff pointed out before, even

something as absurd as "failure to do a polka dance" can be the basis for monetary liability, so long as the *right* that this omission compromised was, itself, clearly established, and the necessity of the polka dance was obvious at that particular point in time.

73.    As a result, the two Defendants in this case lose any/all immunity for liability, including liability for damages.

## SECTION VI:  RELIEF REQUESTED

74.    To make Plaintiff whole for this violation of his absolute constitutional right to an impartial judiciary, Plaintiff requests the following relief:

### Injunction No. 1: Implementation of compliant system

75.    Plaintiff is entitled to this relief, even if the Court disagrees with Plaintiff on the issue of qualified immunity from damages liability.  See *ex parte Young*, 209 US 123 (1908) (another example of a court exercising its limited authority to create law, only where it would be unconstitutional to not have this law).

76.    Plaintiff asks that the Court enjoin the Arkansas Administrative Office of the Courts to implement a system for selecting special judges that actually complies with the State's constitutional obligation to provide the Plaintiff with an impartial judiciary.

77.    This system should include, among other things, the following:

(a)    Requiring all statements made by the special judge candidate during his selection interview to be under penalty of perjury.

(b)    Disqualifying any judge from being assigned who does not pledge, under oath, to always follow the law, even if he disagrees with the law.  Hew will interpret the law only insofar as it is unreasonably vague. He will not create previously non-existent causes of action unless it would be unconstitutional to do so, and he will not IGNORE an otherwise

applicable law; by his pledge, he will only fail to uphold a law by 1) openly acknowledging the law's existence, 2) openly refusing to give it effect, 3) on the grounds that the law is unconstitutional, 4) state, with specificity, what provision of the Arkansas and/or United States Constitutions this law is in conflict with, and 5) state, with specificity, how the law is in violation of that constitutional provision.

**(c)**     Whenever ruling on novel questions of law or interpreting a vague law, he must pledge, under penalty of perjury, that he will resort exclusively to the existing canons of statutory construction.

**(d)**     The special judge candidate must pledge under oath to consider only those factors which the law allows him to consider, and absolutely nothing else, and ESPECIALLY not his personal disdain for one litigant and/or personal favor for another.

**(e)**     The special judge must issue explanations for each of his rulings, giving specific findings of fact and appropriate legal citations.  The reason for this is two-fold:

    i.     This is already required by Arkansas precedent.[4]  Thus, it is part of the oath spoken of in sub-paragraph (b). This specific oath is being requested, just so that the judges cannot make the argument that they made an honest mistake about the law.  By requiring them to say it out loud, they know what the law is, and can't argue "good faith mistake" as a defense.

---

4   See *Little Rock Wastewater Utility v. Larry Moyer Trucking, Inc.*, 902 SW 2d 760, 766 (1995) ("we have remanded for reconsideration when the trial court's order gives no explanation that can be founded in the proper application of the law. Here, the court did not give an explanation, and we do not know whether the ruling was erroneously founded in law") See also *Vereen v. Hargrove*, 96 SW 3d 762, 768 (2003) ("Here, the trial judge did not provide an explanation for his failure to award attorney's fees to appellees. When the trial judge's order gives no explanation that can be founded in the proper application of the law, it is necessary to remand for reconsideration") See also *Crockett & Brown v. Wilson*, 321 Ark. 150, 901 S.W.2d 826, 830-831 (1995): "the trial court should explain the basis of the sanction so a reviewing court may have a basis to determine whether the chosen sanction is appropriate ... Here, the Pulaski Chancery Court failed to specify in its order how it determined why the $15,000 amount was appropriate in these circumstances ... again, the trial court did not explain how it reached the monetary award ordered ... We therefore reverse and remand"

ii.    The reason why that is already required is because … it helps ensure that trial

courts follow the law, and makes violations of precedent easier to trace.

**(f)**    The special judge must be disqualified from assignment in any case in which he does

not issue all required pledges, under oath.

78.    Other criteria for this new system may be added to Plaintiff's request for relief, as the

case progresses.  For purposes of the Complaint, however, this is sufficient to get the case in the

door.

**Injunction No. 2:  New special judge added to Plaintiff's case to clean up Rogers' mess.**

79.    Next, Plaintiff asks that this Court to order the two Defendants, once they have

implemented the new system spoken of above, to assign a new special judge to Plaintiff's case

that will do all of the following:

**(a)**    Will grant a Motion for Rule 60(b) Relief in Plaintiff's case and reverse the judgment.

**(b)**    Will nullify every order entered in plaintiff's case by Russell Rogers (including, and

especially, the dismissal of five out of seven of Plaintiff's claims). The rulings of judges who

came before Rogers may stay, because those would have been on the books, even if the

Defendants had discharged their constitutional duty to appoint competent judges (because

they don't take on the duty to appoint any judges, let alone competent ones, until all the local

circuit judges have recused).

**(c)**    Issue replacement rulings in place of the rulings so nullified that are consistent with

the oath requested in Injunction No. 1. These replacement rulings may yet still have the

same effect as Rogers' rulings, but at least we will know that they are consistent with the law.

**(d)**    Conduct a full discovery with the parties in the case, affording each party the full

right to discovery, and enforcing every single rule of discovery, equally against both parties.

(e)     Conduct a jury trial, and not allow either party to introduce evidence against the other party that is inadmissible under the Arkansas (as opposed to Federal) Rules of Evidence or any law, and ...

(f)     Do everything else that is needed – including, in the unlikely event that it is necessary, a polka dance – to ensure that both parties receive a fair trial.

80.     This prosective injunctive relief is designed to make Plaintiff whole, and cure his injury. If this injunction is granted, the $11M compensatory damages that are about to be addressed need not be awarded.

### Compensatory damages:  $11,000,000, plus pre- and post-judgment interest, for loss of Plaintiff's case.

81.     Because of the Defendant's purposeful failure to discharge their constitutional obligations, Plaintiff lost his case.  There is a very good chance that he would have won his case if the Administrative Office had discharged their constitutional obligation to assign competent, qualified, and unbiased special judges, for three reasons:

(a)     The Defendant admitted to the underlying facts, including the extent of damages.

(b)     Even if he didn't admit to it, there was no evidence, for either party, except one person's word versus the word of the other, meaning that, if the Defense were not allowed to introduce all the prejudicial evidence that he did that served no purpose other than to show that Plaintiff was a "bad person," the jury very easily could have found Plaintiff to be credible.

(c)     If the biased judge had not chosen to disallow some of Plaintiff's most powerful evidence, Plaintiff's case likely would have been much more compelling.

82.     As a result, the Defendants' unconstitutional actions are the proximate cause of costing

Plaintiff literally millions of dollars.

83.     Since the Defendants are not entitled to qualified immunity (because again, what is important is not , they should be liable for everything they cost Plaintiff.

### $1,000,000 for severe infliction of emotional distress

84.     As stated in ¶¶ 27-28 of this Complaint, Plaintiff suffered severe emotional distress out of his belief that there was no justice in the world.  What good are having laws if judges could simply disregard those laws for any reason they wanted, and face no consequences?

85.     Because this emotional distress resulted in a literal *suicide attempt*, Plaintiff believes that, if a jury of his peers believes that the two Defendants are partially responsible for allowing this injustice to happen, that a million dollars would be well within the bounds of reason.

### $24,000,000 in punitive damages for their reckless
### disregard to Plaintiff's constitutional rights.

86.     Because the Defendants acted purposefully, and out of a reckless disregard to the risk of causing a constitutional violation, punitive damages are appropriate.

87.     Plaintiff asks for twice the actual damages in punitive damages, to send a message to future Administrative Offices.

### CONCLUSION AND WRAP-UP

88.     Let us recap the points of this Complaint.

    **(a)**     The Arkansas Administrative Office of the Courts has freely admitted that they do absolutely nothing to ensure a litigant's right to a fair trial and an impartial judiciary.

    **(b)**     Plaintiff lost an $11,000,000 lawsuit as a result of this omission.

    **(c)**     Since their functions are administrative in nature, they have no absolute immunity from suit.

**(d)**    Since the right to an impartial judiciary is a clearly-established constitutional right, there is no qualified immunity, either, even if the requirement of any one specific act or omission is NOT clearly-established.

**(e)**    Plaintiff demands prospective and retrospective injunctive relief to remedy this constitutional violation.

**(f)**    Plaintiff demands $12,000,000 to make him whole, and $24,000,000 in punitive damages to send a message to future government agents who may have a mind to do, or not do, anything – no matter what that "anything" is – that has the natural consequence of "loss of constitutional rights."

89.    Plaintiff demands a jury trial to try any facts.

90.    Wherefore, premises considered, Plaintiff respectfully prays that all the requested relief be granted.

So requested on this, the 2nd day of June, 2015.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com